[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16784

_____

D. C. Docket No. 06-00375-CV-IPJ-HGD

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 8, 2010
JOHN LEY
CLERK

EDDIE D. POWELL,

Petitioner-Appellant,

versus

RICHARD ALLEN,
Commissioner, Alabama Department
of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 8, 2010)

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Eddie Powell was convicted of capital murder on June 16, 1998. In accordance with the 11-1 jury recommendation, on August 27, 1998, the trial judge sentenced him to death.[1] Powell appealed his conviction and sentence to Alabama's criminal appellate court and, when both were affirmed, Powell v. State, 796 So. 2d 404 (Ala. Crim. App. 1999), to the Alabama Supreme Court, which also affirmed, Ex parte Powell, 796 So. 2d 434 (Ala. 2001). Powell then filed a petition for a writ of certiorari with the Supreme Court of the United States, which denied the writ. Powell v. Alabama, 534 U.S. 904 (2001).

Powell began his state habeas process by filing, pro se, a petition under Rule 32 of the Alabama Rules of Criminal Procedure for relief from judgment in September, 2002. After his initial petition was dismissed as improperly plead, Powell filed, again pro se, an amended petition in November, 2003. Powell then obtained post-conviction counsel and, on the day of his status conference, filed a second amended petition in December, 2003 through counsel. In May, 2004, on the same date as Powell's Rule 32.8 pre-hearing conference, Powell filed a third amended petition. The state judge, in July, 2004, (1) denied Powell's petition and

_____

[1] This was Powell's second trial. His first trial concluded in a mistrial because the jury could not reach agreement regarding punishment. While preparing for retrial of the penalty phase, Powell moved for a new trial based on the prosecutor's allegedly improper comment on Powell's decision to remain silent. The judge agreed, reversed the conviction, and Powell then received a new trial.

2

request for evidentiary hearings; (2) found every claim except one in Powell's second amended petition to be time-barred, and (3) struck Powell's third amended petition. Powell then requested permission to amend the petition for the fourth time, and the court denied the request. The appellate court overturned the Rule 32 court's decision to the extent it found the second amended petition time-barred, but affirmed the Rule 32 court's merits holdings (which included the denial of any evidentiary hearings). The Alabama Supreme Court quashed the petition for a writ of certiorari without an opinion.

Powell then filed in federal court for a writ of habeas corpus and applicable evidentiary hearings, under 28 U.S.C. § 2254. The district court denied both. We granted Powell a certificate of appealability on the following nine issues:

1.    Whether Powell is mentally retarded such that his execution is prohibited by the Eighth Amendment.

2.    Whether the trial court improperly refused to instruct Powell's jury on the lesser included offense of felony murder.

3.    Whether Powell received ineffective assistance of counsel during his penalty phase due to counsel's failure to adequately investigate and present effective mitigation evidence.

4.    Whether Powell's trial counsel were ineffective for failing to investigate and present additional evidence of voluntary intoxication based on drug use during Powell's trial.

5.    Whether the State presented false DNA evidence in Powell's trial.

3

6.     Whether the process employed to create Powell's venire violated his Sixth Amendment right to a venire comprised of a fair cross-section of the community.

7.     Whether the method for selecting Powell's grand jury foreperson violated the Equal Protection Clause.

8.     Whether Powell made a prima facie case of racial discrimination during jury selection.

9.     Whether the trial court violated Powell's right to question jurors on the issue of race by asking, in a racially-charged capital case, only one question to the entire jury pool regarding racial attitudes.

## APPLICABLE STANDARDS OF REVIEW

We review the district court's conclusions on legal questions and mixed questions of law and fact de novo and its factual findings for clear error. Rhode v. Hall, 582 F.3d 1273, 1279 (11th Cir. 2009). However, our review of the Alabama habeas court's decision[2] is limited by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). See 28 U.S.C. § 2254; Williams v. Taylor, 529 U.S. 362, 402-03 (2000). Under AEDPA, we accord a presumption of correctness

---

[2] When the last state court rendering judgment affirms without explanation, we presume that it rests on the reasons given in the last reasoned decision. Ylst v. Nunnemaker, 501 U.S. 797, 803-805 (1991); Sweet v. Sec., Dep't of Corrections, 467 F.3d 1311, 1316-17 (11th Cir. 2006). Because the last reasoned decision in this case was the appellate court's review of the Rule 32 court's decision, we look to the appellate court's decision. Where the appellate court affirmed the Rule 32 court's holding for the Rule 32 court's reasons, we, in effect, review the initial Rule 32 court's decision.

4

to a state court's factual findings. § 2254 (e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). We therefore grant habeas relief to a petitioner challenging a state court's factual findings only in those cases where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). See Wiggins v. Smith, 539 U.S. 510, 527-28 (2003).

AEDPA similarly constrains our review of legal questions decided on the merits in state court. Under the statute, we cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless:

> [T]he adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). The Supreme Court has further explained the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable

facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 413. When, however, a claim is properly presented to the state court, but the state court does not adjudicate it on the merits, we review de novo. Cone v. Bell, — U.S. —, —, 129 S.Ct. 1769, 1784 (2009).

If a petitioner fails to "properly" present his claim to the state court – by exhausting his claims and complying with the applicable state procedure – prior to bringing his federal habeas claim then AEDPA typically bars us from reviewing the claim. Exhaustion requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see § 2254(b),(c). That is, to properly exhaust a claim, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 350-51 (1989) (quotation omitted).

In the process of exhausting a claim, the petitioner must comply with all "independent and adequate" state procedures, else the petitioner will have procedurally defaulted on that claim. See Wainright v. Sykes, 433 U.S. 72, 86-87 (1977); Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999); 28 U.S.C. §

6

2254(b),(c). Where a petitioner has not "properly presented his claims to the state courts," he will have "procedurally defaulted his claims" in federal court. O'Sullivan, 526 U.S. at 848. To determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision, this Court has set forth the following three-part test: (1) the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim; (2) the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law"; and (3) the state procedural rule must not be applied in an arbitrary or unprecedented fashion. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) (citations omitted). We review de novo the district court's determination that a claim has been procedurally defaulted. See Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008) (citation omitted).

## DISCUSSION

### I. CONVICTION ISSUES

We turn first to the five claims Powell makes pertaining to jury issues during trial. As to these claims, we find no reversible error for the following reasons.

First, the method by which Powell's judge selected his grand jury foreperson does not make out a prima facie violation of the Equal Protection Clause. See

7

Rose v. Mitchell, 443 U.S. 545 (1979). To make out a prima facie violation, a defendant must show, among other things, that the applicable racial group was underrepresented relative to its proportion of the population as a whole. See Valle v. Sec. for Dept. of Corrections, 459 F.3d 1206, 1215-16 (11th Cir. 2006) (prima facie case requires "comparing the proportion of the group in the total population to the proportion of the group chosen to serve as grand jurors over a significant period of time." (citing Castaneda v. Partida, 430 U.S. 482, 494 (1977)). Before Powell's judge,[3] however, African-Americans (the group at issue) were over-represented as grand jury forepersons. We thus affirm the district court's opinion on this issue.

Second, Powell argues that his Sixth Amendment right to an impartial jury "drawn from a fair cross section of the community," Holland v. Illinois, 493 U.S. 474, 480 (1990) (quoting Taylor v. Louisiana, 419 U.S. 522, 527 (1975) (emphasis omitted)), was violated by his judge's juror-selection procedure, wherein Powell's jurors were selected from those remaining after attorneys for other cases selected their jurors from the venire. Powell has not alleged that this process is the general practice for capital cases nor, if it is, that it results in a non-representative venire

---

[3] The judge selected the grand jury foreperson in the following manner: first by selecting the foreperson at random; then, with the recommendation of the prosecutor, substituting someone more "literate" for the original choice. We express no view as to the wisdom of this method nor its legality if challenged under a different set of facts.

for capital cases. See Duren v. Missouri, 439 U.S. 357, 364 (1979) (prima facie case requires non-representative venires due to systematic exclusion from the jury process). We thus find no theory, under these cases, which could permit us to overturn the district court's decision denying Powell relief on this issue.

Third, Powell claims that the prosecutor struck two of the three African-Americans remaining in Powell's venire (i.e., the jurors remaining after the jury selection procedure described above and after strikes for cause), in violation of the Equal Protection Clause. Batson v. Kentucky, 476 U.S. 79 (1986). Instead of pointing to evidence supporting the specific claim that either of the two jurors were struck because of race, Powell's brief and oral arguments focused on more general allegations regarding the racially charged nature of Powell's trial. The record in this case cannot support this Batson claim.

Fourth, Powell argues that his voir dire violated his right, as a defendant accused of an interracial crime, "to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." Turner v. Murray, 476 U.S. 28, 36-37 (1986). However, "the trial judge retains discretion as to the form and number of questions on the subject [of race], including the decision whether to question the venire individually or collectively." Id. at 37. Because the judge indeed permitted a question, posed to the jury collectively, on racial bias (and

9

Powell makes no other relevant allegations) we cannot say that the Rule 32 court's decision to uphold the trial judge's voir dire was contrary to or an unreasonable application of federal law.

Fifth, contrary to Powell's argument, Beck v. Alabama, 447 U.S. 625 (1980), does not entitle Powell to a jury instruction on felony murder, even if it is a lesser-included offense for capital murder in Alabama. Because Powell's jury charge included not only capital murder but also intentional murder and manslaughter, neither of which permit the death penalty, Powell's jury did not face "the choice of either convicting the defendant of the capital crime, in which case it is required to impose the death penalty, or acquitting him, thus allowing him to escape all penalties for his alleged participation in the crime." Beck, 447 U.S. at 628-29. Because the jury was not faced with the "all-or-nothing choice" Beck is concerned with, Powell's claim cannot succeed. Schad v. Arizona, 501 U.S. 624, 647 (1991).[4]

Powell then makes two claims regarding evidentiary issues. First, he alleges that the state presented false DNA evidence by presenting falsified results from its DNA test to the jury, then drawing prejudicial conclusions from those false results.

---

[4] We note that Powell has not argued to us that his counsel was ineffective for failing to request a felony-murder instruction under Alabama law. Powell has alleged, rather, that federal law entitles him to the instruction.

Second, Powell alleges that the state misleadingly asserted that the oral, anal, and vaginal swabs taken from the victim all matched Powell. On review of the record, we cannot say that the state made an unconstitutionally misleading assertion on this issue. As to the allegedly false DNA results, Powell points to no record evidence, nor has our review of the record revealed any, from which the allegedly true test results can be found. Moreover, he makes no claim before us that the prosecutor failed to disclose any results (e.g., a Brady or Giglio claim) or that trial counsel was ineffective for failing to discover them. Finally, the state expert testified that the DNA evidence in the anal swab conclusively belonged to Powell, a conclusion Powell does not now contest. Consequently, we find that his claim has no merit.

Powell also asserts that his counsel's failure to present additional evidence of his extreme alcohol and substance abuse immediately prior to his crime – when his defense relied primarily on an argument that he was insane due to voluntary intoxication – constitutes ineffective assistance of counsel. However, Powell fails to point to any evidence about the effect of the addition of other substances on his sanity or ability to form a specific intent. To be sure, Powell alleges that his counsel was ineffective for failing to investigate such evidence by, for example, failing to retain a pharmacologist to evaluate the substances Powell allegedly ingested. However, Powell has not alleged nor shown what the result of any such

11

expert testimony would be. Without allegations of any prejudice, we cannot say that Powell's counsel was ineffective in the guilt phase for failing to investigate the scope of Powell's substance abuse.

## II. PENALTY PHASE

A. Atkins Claim

Initially, as to Powell's claim that he is sufficiently mentally retarded that Atkins v. Virginia, 536 U.S. 304 (2002), bars his execution, we cannot say that the Rule 32 court's conclusion that Powell failed to allege facts in his Rule 32 petition sufficient to show that he was mentally retarded was contrary to or an unreasonable application of Atkins.[5] Instead of establishing a national standard and procedures for determining whether a particular individual is mentally retarded, the Supreme Court in Atkins left to the states "the task of developing appropriate ways to enforce the constitutional restriction" upon the execution of mentally retarded convicts. Id. at 317. In Alabama, to establish mental retardation a defendant "must have significantly subaverage intellectual functioning (an IQ of 70 or below), and

_____

[5] The Rule 32 court relied on two distinct conclusions in rejecting Powell's claim of mental retardation. In addition to dismissing the claim as described above, the state court also reviewed the record evidence from the guilt and penalty phases of Powell's trial and determined that he could not establish that he had both significantly subaverage intellectual functioning and significant deficits in adaptive functioning either before eighteen years old or currently. Because we cannot state that the Rule 32 court's dismissal of this claim for failing to allege sufficient facts was contrary to or an unreasonable application of Atkins, we need not address its alternative holding.

12

significant or substantial deficits in adaptive behavior. Additionally, these problems must have manifested themselves during the developmental period (i.e., before the defendant reached age 18)." Ex Parte Perkins, 851 So. 2d 453, 456 (Ala. 2002). More recently the Alabama Supreme Court reaffirmed the definition of mental retardation it identified in Perkins, but also clarified that it is implicit in that definition that the IQ and deficits in adaptive behavior exist not only prior to the age of eighteen but also both at the time of the crime and currently. Smith v. Alabama, — So. 2d —, 2007 WL 1519869, at *8 (Ala. May 25, 2007).

In his Rule 32 petition, Powell alleged the following fact as the basis for his claim of mental retardation: "Mr. Powell was diagnosed as mildly mentally retarded in the fifth grade by the Lake County, Illinois school system." However, Powell did not allege in his Rule 32 petition that his IQ was or is 70 or below, which is necessary to support a finding of mental retardation in Alabama. See Perkins, 851 So. 2d at 456. Because a finding of mental retardation to sustain an Atkins claim requires both significantly subaverage intellectual functioning and significant deficits in adaptive functioning, Powell has failed to plead facts on which an Atkins claim can be based. Accordingly, we cannot say that the state court's determination of this issue was contrary to or an unreasonable application

13

of Atkins.[6]

B.  Ineffective Assistance of Counsel

Powell also argues that his trial counsel was ineffective at the penalty phase for failing to investigate and present mitigating evidence regarding his deprived background, intellectual and developmental impairments, multiple traumatic head injuries, and the effect of drug use on his mental capacity.  The Rule 32 court, affirmed by the state appellate court, found that Powell failed to plead facts on which an ineffective assistance claim could be based and, for that reason, denied Powell's claim and request for an evidentiary hearing.[7]  See Boyd v. State, 913 So. 2d 1113, 1125 (Ala. Crim. App. 2003) (only when "facts are pleaded, which, if true, entitle a petitioner to relief, [is] the petitioner then entitled to an opportunity, as provided in Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts." (citing Ala. R. Crim. P. 32.6) (emphasis omitted)).  We thus review the Rule 32 court's rejection of Powell's claim as a holding on the merits.  Judd, 250 F.3d at 1313; Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997) (finding no procedural bar from state court ruling on similar pleading rule because the ruling "require[d] some evaluation, however cursory, of the merits of a petitioner's

_____

[6] Likewise we find no error in the district court's denial of Powell's request for an evidentiary hearing in federal court on this issue.

[7] The Rule 32 court's initial finding that these claims were time-barred was rejected by the state appellate court based upon an intervening decision of the Alabama Supreme Court.

14

claim"). In doing so, AEDPA limits our review to whether the state court's determination that Powell failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent. Thus, we look only to the allegations in Powell's Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.[8]

Under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), trial counsel is ineffective when:

> First, . . . counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, . . . the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Id.</u> at 687.

To be found deficient, capital counsel's performance must be "outside the wide range of professionally competent assistance." <u>Id.</u> at 690. Professionally competent assistance includes a duty to conduct a reasonable investigation. <u>Id.</u> at 690-91. The Court has emphasized that only when counsels' choices are made

---

[8] Powell has made additional allegations and submitted more evidence in support of his claim of ineffective assistance of counsel in his federal habeas petition. In accordance with AEDPA, however, we do not consider such supplemental allegations or evidence when reviewing the reasonableness of the state court's resolution of this claim, which was based on the allegations before it.

after a "thorough investigation of law and facts relevant to plausible options" are those choices "virtually unchallengeable." Id. at 691. When, however, "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. Thus, at bottom, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." Id. at 691. This means that when we assess the attorney's decision not to investigate, we "must consider . . . whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. 510, 527 (2003). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Powell claims that his counsel knew about, but failed to properly investigate and present evidence of Powell's deprived background and mental impairment. Specifically he asserts that his counsel failed to present evidence of his intellectual

16

limitations, developmental delays, multiple traumatic head injuries, substance abuse, depression, and parental neglect and abandonment because counsel failed to interview numerous additional family members. Powell argues that his counsel's allegedly unreasonable investigation (1) lead counsel to omit key information regarding the breadth and significance of Powell's deprived background and mental impairments, and (2) undermined the impairment evidence which was presented. Powell concludes that had the jury received accurate information, there was a reasonable probability that it would have reached a verdict of life imprisonment instead of death.

Having reviewed the allegations in Powell's Rule 32 petition in this case, we affirm because, regardless of whether Powell has made allegations sufficient for a showing of deficient performance, he has not alleged facts sufficient to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland 466 U.S. at 694.[9] Because Powell has not alleged what mitigating factors would have been established but for his counsel's deficient performance, we are unable to conclude that any such deficiency resulted in prejudice to him, and thus we cannot say that

---

[9] As with his Atkins's claim, Powell also requested an evidentiary hearing in federal court on his ineffective assistance of counsel claim. We find no error in the district court's denial of an evidentiary hearing on this claim.

the Rule 32 court's dismissal of this claim was contrary to or an unreasonable application of Supreme Court precedent.

Although Powell alleges that his counsel was ineffective for failing to investigate and present evidence of Powell's numerous significant head traumas, he makes no allegations and presents no information pertaining to the significance of his head injuries on his subsequent behavior and how this would have changed the outcome of the penalty phase of his trial. In his state court habeas petition, he did not allege the existence of any testimony from a medical professional nor the existence of any medical records that addressed the relationship between his alleged head injuries and his subsequent behavior.[10] In asserting that trial counsel was deficient for failing to retain a neurologist to investigate the impact of his head injuries, he fails to point to any allegations in his state court petition that such testing has since been conducted or what the results of such testing would show. Without any allegations explaining how his alleged head injuries affected his actions at the time he committed the crime of conviction, we cannot say that it was unreasonable for the state court to conclude that the failure of Powell's counsel to

_____

[10] In his federal habeas petition, Powell now refers to an unidentified post-conviction neuropsychologist who has allegedly commented on the inadequacies of Dr. Rosenzweig's assessment. He also alleges that neuropsychological testing confirms that Powell was suffering from a traumatic brain injury at the time of his trial. Nonetheless, because these allegations were not before the Rule 32 court and Powell has not given sufficient reasons for us to consider them, they do not inform our determination of whether the Rule 32 court's dismissal of Powell's claim of ineffective assistance of counsel was contrary to or an unreasonable application of Strickland.

18

investigate and present neuropsychological testing unfairly prejudiced Powell so as to render the penalty phase of his trial fundamentally unfair. See Strickland, 466 U.S. at 687.

Likewise, Powell argues that his trial counsel should have obtained the testimony of his teachers or school records, because he asserts that "school records, military records, health records, employment records, correctional records, and religious records of both Mr. Powell and his parents and his siblings" were available and would have presented a complete picture of his life. However, Powell did not allege in his Rule 32 petition what any such records would show other than to make the conclusory allegation that such records would have revealed "numerous mitigating circumstances." He does not, however, allege what those mitigating circumstances are. As such, we cannot conclude that the Rule 32 court's dismissal of Powell's ineffective assistance of counsel claim was an unreasonable application of Strickland.

Additionally, Powell's mother testified at the penalty phase that Powell's school had found him to be mildly mentally retarded and, as a consequence, placed him in a special education class. Powell argues that because of Powell's early school diagnosis of mental impairment, his counsel should have asked Dr. Rosenzweig to perform an intelligence test in preparation for the penalty phase.

19

However, because Powell failed to allege before the Rule 32 court what the results of such IQ testing would show, we have no basis to evaluate whether there is a reasonable probability that the results of such a test would have made a difference in the outcome of his sentencing.

Powell also asserts that his counsel was ineffective for failing to investigate the extent of his substance abuse problems. However, both Dr. Rosenzweig and Powell's aunt testified at his original sentencing hearing that Powell began drinking and taking drugs at an early age. Powell did not allege what additional testimony was available from family members that was not already before the jury regarding the extent of his drinking and drug abuse.

Finally, Powell alleges that his counsel was deficient for failing to investigate and present additional evidence regarding his family life and upbringing. However, Dr. Rosenzweig testified at his original sentencing hearing regarding many of the significant events from Powell's childhood. She testified about the divorce of Powell's parents when he was nine years old and the effect it had on Powell's behavior. She stated that his parents lived in different states, that he had to live with relatives because his mother worked much of the time, that he became very close to his maternal grandfather and that family members described him as a sad child. Dr. Rosenzweig confirmed that Powell likely suffered from

20

childhood depression and discussed how his behavior changed following his parents' divorce. Powell does allege counsel failed to present two incidents of domestic violence from the time when his parents were still married. Under our caselaw, these additional incidents are not enough to show prejudice.

For the reasons discussed above, we cannot say that the state court's decision was contrary to or an unreasonable application of <u>Strickland</u>'s ineffective assistance of counsel standard.

AFFIRMED.