[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
OCTOBER 10, 2012
JOHN LEY

_____

No. 09-15961

_____

D. C. Docket No. 05-01215-CV-KOB-HGD

ANTHONY BOYD,

Petitioner-Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL OF THE STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 10, 2012)

Before BARKETT, MARCUS and WILSON, Circuit Judges.

MARCUS, Circuit Judge:

In this death case, Anthony Boyd has filed a federal petition for writ of

habeas corpus challenging the validity of his 1995 conviction and death sentence

imposed in Alabama for the capital murder of Gregory Huguley. The district court

denied Boyd's petition in its entirety, concluding, for a variety of reasons, that the

claims Boyd had raised in his original state petition for post-conviction relief, as

well as the claims raised in his amended petition were procedurally barred from

federal review, but that even if reviewed on the merits, they would fail. After

thorough review, we affirm.

## I.

### A.    The Murder and Boyd's Trial

The Alabama Court of Criminal Appeals summarized the basic facts of the

murder this way:

> The victim of this crime was Gregory Huguley. The participants in this
> capital murder are the defendant, Anthony Boyd, Shawn Ingram, Marcel
> Ackles and Quintay Cox. All of these participants played an active role
> in the abduction and the murder of the victim. All were coconspirators
> and accomplices.
>
> On July 31, 1993, Anthony Boyd, along with Shawn Ingram and Marcel
> Ackles, were looking for Gregory Huguley, a/k/a 'New York,' because
> Gregory Huguley had gotten cocaine from them several days before and
> he had failed to pay up. The charge for the cocaine was $200.00. These
> men were later joined by Quintay Cox, who provided a 9-millimeter
> Mack 11 automatic pistol. These men continued their search for
> Gregory Huguley and in the early evening of July 31, 1993, they spotted

2

'New York' on 15th Street in Anniston, Alabama. At this time they were riding in a blue van that Marcel Ackles had rented. The van approached 'New York' and then stopped. Shawn Ingram took the Mack 11 automatic pistol and walked over to 'New York' and told him to come here. 'New York' hesitated and then Shawn grabbed 'New York' and pushed him into the van and onto the floor by the first bench seat. After leaving the scene of the abduction, Quintay Cox [was] let out at Cooper Homes and [was] instructed to follow the others. The first stop of the defendant and the participants was at a gasoline station, where Marcel Ackles got out and purchased some gasoline in a plastic container. Then all of the participants, including the defendant and the victim, proceeded to a baseball field in the Munford community in North Talladega County, Alabama. During this trip Gregory Huguley was made to lie down on the floor board of the van by defendant Boyd and co-defendant, Shawn Ingram. He kept saying to his abductors, 'Do not kill me. I will get your money.' When the participants arrived at the baseball field between 7:00 p.m. and 8:00 p.m., Shawn Ingram made 'New York' lie down on a bench. Then Marcel Ackles taped 'New York's hands and mouth and the defendant, Anthony Boyd, taped his feet, all with duct tape. Then 'New York' was taped to the bench. At this time, Shawn Ingram doused gasoline on 'New York.' Then he made a two-foot trail of gasoline from the bench where 'New York' was lying. Then he lit the trail of gasoline which led to 'New York' and caused him to be caught on fire. The defendant and the other participants watched 'New York' burn for 10 to 15 minutes until the flame went out. During the burning 'New York' rolled over a few feet. Then at this point in time he died as a result of the burning. Then the defendant and Shawn Ingram left in the van and returned to Anniston, and Quintay Cox and Marcel Ackles returned to Anniston in Quintay's car. On the way back to Anniston, Marcel said to Quintay, 'We are all in this together. If one goes down, all go down.' They arrived back in Anniston around 7:45 to 8:00 p.m.

The murder of the victim, Gregory Huguley, was of the intentional killing type while the defendant committed murder during kidnapping in the first degree. The defendant possessed all of the requisite intent to

sustain a conviction as charged in the indictment. He was an active and full participant in the death of the victim, Gregory Huguley.

Boyd v. State, 715 So. 2d 825, 832 (Ala. Crim. App. 1997) (alterations in original).

At the guilt phase, the State presented forensic evidence, along with the testimony of eyewitnesses to the events highlighted by the Alabama Court of Criminal Appeals. Several witnesses testified that prior to the murder, they had watched Huguley being forced into a van, and three of them specifically identified Boyd as one of the people in the van. Two witnesses testified to hearing that the victim owed Boyd and his co-defendants money for drugs and that they had to "get" him. A co-defendant, Quintay Cox, revealed that the defendants had actually been looking for another person named "Dexter" before they located Huguley. Cox then provided the details surrounding Huguley's kidnaping and murder, and explained that Boyd had participated fully, riding in the van with the others, taping together Huguley's feet before another co-defendant, Ingram, doused Huguley with gasoline and set him on fire, and then watching Huguley burn to death on a baseball field. Cox further testified that after the murder, Boyd

exclaimed, "Well, we all in this together now."[1] Still another witness relayed that Boyd later confessed to having participated in Huguley's murder.

Boyd's defense team attempted to establish an alibi for Boyd at the time of the murder. Anniston Police Officer Nigel Raines was called to testify that he chased Boyd one evening in July of 1993, but he could not determine the exact date of the encounter. Three witnesses said that they had been at a party with Boyd on the night of the murder, but admitted that they did not see him until 10 or 11 p.m. that night. Still another witness, Felecia Parker, could not recall what time she saw him at the party. However, one witness, Felicia Jones, did offer an alibi for the time of the murder, testifying that she had seen Boyd at the party a few minutes after she arrived at 7 p.m. Another witness was called in an effort to impeach the testimony of Sharon Ackles, one of the State's eyewitnesses to the kidnaping; this defense witness claimed that Ackles had never left the area of her

---

[1] Although the Alabama Court of Criminal Appeals attributed this comment to Marcel Ackles, the trial transcript reflects the following colloquy:

[Prosecution]: Did you or Anthony either one say anything about what had happened?

[Cox]: Well, Anthony said when we was in the car he said, "Well, we all in this together now."

[Prosecution]: He say anything else?

[Cox]: No.

5

house on the day of the murder but only walked up and down the block in front of the house, and thus could not have seen the kidnaping.

The jury found Boyd guilty of capital murder on March 16, 1995. At the penalty phase, the State presented no additional evidence. The defense offered fourteen witnesses who provided positive character testimony, describing how Boyd had worked with the children in his neighborhood and had been a positive influence on them and, indeed on people in the community. These witnesses included his mother, grandmother, stepfather, stepbrother, and two women with whom he had children. Several witnesses asked the jury to spare Boyd's life.

The jury returned a verdict recommending a sentence of death by a vote of ten to two. After a sentencing hearing, and in accordance with the recommendation of the jury, the trial court sentenced Boyd to death by electrocution. In its sentencing memorandum, the trial court found two statutory aggravating circumstances: (1) that the crime was committed while the petitioner was engaged in the commission of a kidnaping, see Ala. Code § 13A-5-49(4); and (2) that the crime was especially heinous, atrocious and cruel compared to other capital offenses, see id. § 13A-5-49(8). The trial court also found as a statutory mitigating factor that the petitioner had no significant prior criminal history, see id. § 13A-5-51(1), but found no other statutory or non-statutory mitigating factors.

Thereafter, the trial court denied Boyd's motion for a new trial or reconsideration of his sentence.

**B.     Direct Appeal**

The petitioner appealed his conviction to the Alabama Court of Criminal Appeals, which affirmed the judgment and the sentence. Boyd v. State, 715 So. 2d 825, 851 (Ala. Crim. App. 1997). Boyd then petitioned for review by the Alabama Supreme Court, offering the same claims he had raised on direct appeal.

The Alabama Supreme Court adopted the opinion of the Alabama Court of Criminal Appeals, affirming Boyd's conviction and the ensuing death sentence. Ex parte Boyd, 715 So. 2d 852 (Ala. 1998). That court also reviewed the record for evidence of passion or prejudice in the imposition of the death sentence and found none. Finally, it concluded that the trial court and the Court of Criminal Appeals properly weighed the mitigating and aggravating circumstances and that Boyd's death sentence was proportional to the penalties imposed in similar cases. Id. at 856.

The United States Supreme Court denied Boyd's petition for writ of certiorari. Boyd v. Alabama, 525 U.S. 968 (1998).

**C.     State Post-Conviction Relief**

7

On October 20, 1999, Boyd, now employing new counsel, filed a motion for relief from his conviction and sentence pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. We set out the rest of the procedural history surrounding Boyd's state collateral attack because it is central to understanding the issues raised in this appeal. The State moved to dismiss several of Boyd's claims; thereafter Boyd filed motions for discovery. In January 2002, the State moved to amend its answer to the petition and filed an amended answer. On March 15, 2002, the trial court set a hearing date (June 14, 2002) for all pending motions. Some thirty-one months after filing the first petition, on May 15, 2002, Boyd filed an amended petition. At no time, however, did he move the court for leave to amend, nor did the trial court ever grant the petitioner leave to amend his Rule 32 petition. In the amended petition, he reasserted the claims he had set out in his original one, but added several new ones. As for some of the original claims, he provided more detail.

Boyd raised three claims in both his original and amended petitions that are particularly relevant. First, in the original petition, he argued ineffective assistance based on his trial counsel's failure to investigate mitigation evidence for the penalty phase. According to the petitioner, his counsel should have obtained information relevant to his medical history, educational history, employment and

8

training history, family and social history, correctional history, and any religious or cultural influences. Boyd argued that this information would have "revealed a host of mitigating factors." While conceding that trial counsel had called numerous witnesses at the penalty phase to testify about his character, the petitioner complained that counsel never interviewed them prior to offering their testimony. Boyd also listed the names of several other witnesses whom trial counsel failed to call even though they could have testified about Boyd's widespread, positive impact on the community, his leadership abilities and how he mentored young children in his community.

Boyd also added new penalty-phase ineffectiveness claims in the amended petition. Boyd asserted for the first time that trial counsel was ineffective at sentencing because the mitigation expert utilized by defense counsel needed more time to investigate. He also suggested that trial counsel should have investigated whether chemical pollution in the Anniston area might have caused a drop in his IQ, and, thereby, an increase in his propensity toward criminality.

Boyd also claimed in his original petition that his trial counsel was ineffective at the guilt phase in failing to adequately investigate and challenge the State's capital murder charge. Specifically, Boyd urged that his counsel failed to thoroughly investigate each available avenue of defense, improperly relied on the

9

State's version of events, failed to interview the defense's witnesses prior to trial, failed to uncover exculpatory evidence, failed to contest the constitutionality of his arrest, and failed to object to irrelevant and prejudicial evidence introduced during the trial. The petitioner also claimed that his trial counsel failed to adequately examine or cross-examine several witnesses.

Boyd raised this claim again in his amended petition, asserting for the first time however that, among other things, six alibi witnesses were not interviewed, were spoken to only briefly or were not asked about events during the alleged time of the victim's death. He also proffered a brief summary of the putative testimony these witnesses would have given.

Finally, Boyd argued in his original petition that the State had violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by failing to disgorge exculpatory evidence. He claimed that the State failed to provide exculpatory statements made by Boyd while he was in police custody and at the District Attorney's office prior to being charged. He also claimed the State failed to turn over exculpatory evidence learned from interviews with the petitioner's co-defendants, Quintay Cox, Shawn Ingram and Marcel Ackles. Boyd also suggested the State failed to provide the defense with conflicting accounts made by several of the State's witnesses and also failed to disclose some unspecified deals purportedly made

with some of the State's witnesses who had criminal records.[2]  Still other claims

were raised in the original and amended petitions, and we touch on them, briefly,

below.

On June 14, 2002, a hearing was held on the State's motion to dismiss.

After the hearing, Boyd submitted an offer of proof and affidavits in support of the

claims contained in his amended petition.  On July 8, 2002, the State objected to

the offer of proof and the amended petition, observing that the petitioner was

unnecessarily dilatory in making these claims and presenting the offer of proof.

The State argued that the trial court would be well within its discretion to deny any

amendment because of Boyd's lack of diligence.

The state trial court had scheduled an evidentiary hearing for October 23-

24, 2002.  However, on August 28, 2002, the trial court dismissed Boyd's original

---

[2] In the amended petition, Boyd added new Brady claims.  This time, he asserted that, on the evening of July 31, 1993, Officer Raines chased Boyd for trespassing in the Glen Addie housing project, but no logs or reports that would have helped establish a timeline were produced.  He also claimed that on the night of July 31, 1993, and into the early morning of August 1, 1993, an incident when Boyd was present occurred at the Executive Inn in Oxford, Alabama, that caused the Anniston Police Department to be dispatched to that location, but that the State again failed to produce logs which would have established the time of the altercation. Boyd further accused the State of having failed to turn over the investigating officers' field notes, which, he claims, he had a right to inspect.  Finally, Boyd noted that the State informed the court that it had a tape recording of the petitioner threatening Roderick Dye if he testified, but the State never produced this tape or evidence of other threats supposedly made by Boyd to various witnesses.

Rule 32 petition without any reference to the upcoming hearing. Notably, the court never ruled on the claims contained in Boyd's amended Rule 32 petition.

The petitioner appealed the trial court's determination to the Alabama Court of Criminal Appeals, but was denied relief there as well. Boyd v. State, 913 So. 2d 1113 (Ala. Crim. App. 2003). The Alabama Court of Criminal Appeals first addressed Boyd's claim that the trial court had erred in dismissing his Rule 32 petition without considering the additional facts and claims he presented in his amended petition. The Court of Criminal Appeals agreed that the trial court did not consider or rule on the additional facts and additional claims he presented in the amended petition. It noted, however, that Boyd had never moved the court for leave to file an amended petition, that the trial court had never entered an order granting Boyd leave to do so, that Boyd had never objected in any way to the trial court's failure to rule on his amended petition, and that the trial court had never taken any action suggesting that it had granted Boyd leave to file an amended petition, or even that it would consider the claims presented in an amended petition. Because Boyd had failed to invoke any ruling on the amended pleading and voiced no dissatisfaction with or objection to the trial court's failure to rule until his case arrived in the appellate court, where the matter was raised for the first time, the Alabama Court of Criminal Appeals concluded that any of the

12

allegations he raised only for the first time in his amended petition had not been preserved for review, and thus were not properly before the Court of Criminal Appeals. Id. at 1123-24.

The state appellate court did consider the claim in Boyd's original petition that trial counsel rendered ineffective assistance by failing to adequately investigate and present mitigation evidence critical at the penalty phase. Boyd had made numerous unsupported claims offering little or no specificity, in violation of Alabama Rule of Criminal Procedure 32.6(b) ("Rule 32.6(b)"). The court found that Boyd's petition did not suggest an alternate defense that counsel should have pursued during the penalty phase. Nor did Boyd disclose any mitigating factor that would have been revealed had counsel properly investigated and prepared for the penalty phase. Nor, finally, did petitioner disclose the substance of the expected testimony of any of the potential mitigation witnesses. Id. at 1138-39.

The court also found that to the extent Boyd claimed potential mitigation witnesses would have attested to Boyd's positive impact in his community, this testimony would have been cumulative. Id. at 1139. Because Boyd failed to allege how his trial counsel was deficient or, indeed, how the outcome of the trial would have been different had his counsel performed differently, the appellate

13

court concluded that Boyd failed to state a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Id.

The appellate court also considered the petitioner's guilt-phase ineffective-assistance-of-counsel claim raised in the original petition. It agreed with the trial court's findings -- that the claim was properly dismissed pursuant to Rule 32.6(b) because the claim was insufficiently specific and because the defense put on by trial counsel was a reasonable one. Boyd's claim did not disclose any critical exculpatory evidence that trial counsel should have uncovered, nor any specific piece of evidence that went uncovered based on ineffective assistance, nor did it offer any reason why Boyd's arrest and pretrial detention were unlawful, nor did Boyd even suggest how counsel had failed to adequately cross-examine witnesses or what information had been omitted as a result of inadequate cross-examination. Indeed, Boyd had not so much as suggested what kind of defense counsel should have investigated or mounted. Id. at 1131-32. The appellate court also found that Boyd had not alleged how the outcome of his trial would have been different had counsel performed differently. Thus, it concluded once again that petitioner failed to state a claim of ineffective assistance of counsel under Strickland.

Finally, the Alabama Court of Criminal Appeals addressed Boyd's claim found in his original petition that the prosecution violated Brady v. Maryland.

14

First, it found that the Brady claims were procedurally barred because Boyd could have, but did not raise these claims at trial or on direct appeal. Moreover, the court determined that, in any event, these claims were insufficiently specific as required by Rule 32.6(b) because Boyd failed to allege the substance of his purportedly exculpatory statements or those of his co-defendants, nor did he identify any specific witnesses who supposedly had criminal records or gave conflicting accounts or what agreements were allegedly made with them. Finally, the appellate court agreed with the trial court's findings that the petitioner's Brady claim based on the prosecutor's failure to turn over exculpatory statements made by Boyd himself while in police custody failed to state an independent ground for relief.

Thereafter, the Alabama Supreme Court denied Boyd's petition for writ of certiorari on May 27, 2005.

### D. Federal Habeas

On June 3, 2005, Boyd filed this federal habeas petition in the United States District Court for the Northern District of Alabama. The district court denied Boyd's habeas petition in its entirety. As for the argument that the state court erred in dismissing claims found in his original petition for lack of specificity, the district court determined, for the most part, that the state court's resolution of these

15

claims was not on the merits, and thus these claims were procedurally barred. As for Boyd's claim that the state court erred by failing to consider evidence he submitted or to address the merits of the claims that he raised in his amended petition, the district court concluded that because the state court refused to consider them under state procedural law, these claims were also procedurally barred. The district court nevertheless went on to review all of the claims in the amended petition and concluded, for one reason or another, that each claim failed on the merits or was procedurally barred.

Thereafter, the district court granted Boyd's application for a certificate of appealability ("COA") on one issue: whether the district court improperly concluded that the petitioner's amended Rule 32 petition was procedurally barred. Boyd sought to expand the COA in this Court, and we granted the application to consider one additional issue: whether his Rule 32 claims were pled with sufficient specificity to meet the requirements of Alabama's Rule 32.6(b). See Order, No. 09-15961 (11th Cir. Aug. 25, 2010).

This timely appeal follows.

## II.

Boyd filed his federal habeas petition in 2005 (after AEDPA's effective date of April 24, 1996); section 2254(d) governs this proceeding. Wilcox v. Fla. Dep't

16

of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998).  Under § 2254(d), a federal court may grant habeas relief only where the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established law if the court arrived at a conclusion opposite to one reached by the Supreme Court on a question of law or the state court confronted facts that were "materially indistinguishable" from relevant Supreme Court precedent but arrived at a different result.  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision is an "unreasonable application" of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context.  Id. at 407-09.

A state court's factual findings are presumed correct unless rebutted by the petitioner with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Moreover, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim

17

on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

We review de novo whether a district court properly ruled on a procedural bar issue. Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1345 (11th Cir. 2004).

## III.

### A.     The Effect of Dismissal under Rule 32(b)(6) on the Original Petition

For starters, the parties devoted large sections of their briefs addressing whether the state court's rejection of the claims found in Boyd's original petition was a ruling on the merits or a procedural ruling. For the most part, the state court rejected these claims because it determined that Boyd's claims did not provide a "clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds," as required by Rule 32.6(b). The district court largely concluded that these claims were procedurally barred.

Since the district court issued its opinion, however, we have held repeatedly that a state court's rejection of a claim under Rule 32.6(b) is a ruling on the merits. See Frazier v. Bouchard, 661 F.3d 519, 525 (11th Cir. 2011) ("[B]ecause a dismissal . . . for failure to sufficiently plead a claim under Rule 32.6(b) requires

18

an evaluation of the merits of the underlying federal claim, the Court of Criminal

Appeals's determination was insufficiently 'independent' to foreclose federal

habeas review. Accordingly, the district court was not barred from considering the

merits of the relevant claim." (footnote omitted)); <u>Borden v. Allen</u>, 646 F.3d 785,

812 (11th Cir. 2011) ("A ruling by an Alabama court under Rule 32.6(b) is . . . a

ruling on the merits."); <u>Powell v. Allen</u>, 602 F.3d 1263, 1272-73 (11th Cir. 2010)

("The Rule 32 court, affirmed by the state appellate court, found that [petitioner]

failed to plead facts on which an ineffective assistance claim could be based and,

for that reason, denied [petitioner's] claim and request for an evidentiary hearing.

We thus review the Rule 32 court's rejection of [petitioner's] claim as a holding

on the merits.").[3] As we explained in <u>Borden</u>:

> [T]he Alabama Court of Criminal Appeals, in disposing of claims in the
> . . . Petition under Rule 32.6(b), necessarily considered the sufficiency
> of such claims, focusing in on the factors for determining whether the
> petition presented a case sufficient to warrant relief under <u>Strickland v.
> Washington</u>, 466 U.S. 668 [] (1984). In short, the Alabama Rules of
> Criminal Procedure authorize summary dismissal of claims under Rule
> 32.7(d) for failure to fact plead with sufficient specificity as required by
> Rule 32.6(b) and the form petition, much as the § 2254 Rules and the §
> 2255 Rules permit summary dismissal of claims under Rule 4 for failure
> to fact plead under Rule 2 and the federal form petition. Because such

---

[3] We have also concluded that a dismissal for facial insufficiency under Florida's criminal procedure rules is a ruling on the merits. <u>See</u> <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1286 (11th Cir. 2012) ("[J]ust as under our federal procedural rules, a Florida state court's dismissal of a post-conviction claim for facial insufficiency constitutes -- at least for purposes of the procedural default analysis -- a ruling 'on the merits' that is not barred from our review.").

dismissals under the federal rules constitute rulings on the merits, we hold that a summary dismissal of a federal claim by Alabama courts for failure to comply with Rule 32.6(b) is similarly a ruling on the merits.

646 F.3d at 812-13. The district court erred in concluding that it was procedurally barred from reviewing the merits of the claims raised in Boyd's original Rule 32 petition. Thus, we review them on the merits.

**B. The Merits of the Original Petition**

Under Alabama Rule of Criminal Procedure 32.3 ("Rule 32.3"), "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Under Rule 32.6(b), "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." To underscore that final point, Alabama Rule of Criminal Procedure 32.7(d) ("Rule 32.7(d)") allows the state collateral court to dismiss the petition "[i]f the court determines that the petition is not sufficiently specific."

As we've noted, the Alabama Court of Criminal Appeals concluded that the claims embodied in Boyd's original petition were insufficiently specific to satisfy the requirements of Rule 32.6(b). Boyd takes issue with the state court's treatment

20

of three of those claims: that counsel was ineffective at the penalty phase, and at the guilt phase, and that the state violated Brady v. Maryland. We remain unpersuaded; the state court's rejection of each claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

### 1. Ineffectiveness at Penalty Phase

Boyd claimed that trial counsel were ineffective during the penalty phase for failing to properly investigate and present mitigation evidence, in violation of Strickland. It is now hornbook law that to succeed on an ineffective-assistance-of-counsel claim, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. We "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied." Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995). Moreover, where, as here, a claim implicates AEDPA and Strickland, our review is "doubly deferential." See Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 788 (2011) ("Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly

21

deferential, and when the two apply in tandem, review is doubly so." (citations and quotations omitted)).

In this case, Boyd's petition baldly asserts: (1) that effective preparation would have "revealed a host of mitigating factors," without saying what those factors are, other than his "widespread positive impact in his community, his leadership abilities, and the manner in which he guided the young children around him away from trouble," again, without providing any explication, specificity or detail; (2) that trial counsel never interviewed character witnesses nor told them the purpose of their testimony, again without saying what further testimony preparation would have revealed; and finally, (3) that trial counsel failed to call numerous other (named) potential character witnesses to testify on Boyd's behalf, still again offering no explanation about how this additional testimony would have cut against the aggravators in this case, let alone how the result would likely have been different. Taking these vague and conclusory allegations together, the Alabama Court of Criminal Appeals determined that Boyd's claim fell far short, on its face, of establishing either Strickland's performance or prejudice prong. Having reviewed the bare claims in Boyd's original petition, we find ample support in the record for the state court's conclusion that Boyd failed to establish that counsel performed deficiently, or a reasonable probability that any of the

22

alleged mitigation evidence would have resulted in a different outcome at sentencing. Therefore, we agree with the district court that the Alabama court's dismissal of this claim as facially insufficient was neither contrary to nor an unreasonable application of Strickland.[4]

---

[4] Indeed, in Borden this Court faced a petition almost identical to Boyd's. There, we soundly rejected the petitioner's ability to satisfy Strickland's prejudice prong on facial insufficiency grounds, just as the Alabama court did here:

> [T]here are simply no facts presented in the Amended Petition that would warrant a finding of prejudice and therefore habeas relief -- only "bare allegation[s] . . . and mere conclusions of law," Ala. R. Crim. P. 32.6(b). The following quotes from Borden's Amended Petition are illustrative of the level of specificity with which he pled his claims in support of a finding of prejudice under Strickland: "Trial counsel's deficient performance prevented the jury and the trial court from hearing and considering an abundance of mitigating evidence . . . ."; "Mr. Borden was entitled to have all aspects of his background, family life, medical history, school records, and any other life-experience that may be considered mitigating evidence presented to the jury and judge at the penalty phase of his capital trial"; "effective preparation and investigation by defense counsel would have revealed a host of mitigating factors, which should have been presented at Mr. Borden's penalty phase"; "Mr. Borden's parents both possessed information that would have been useful to Mr. Borden's defense"; "other people . . . would have been able to present a complete portrait of Mr. Borden, which would have lessened his culpability for the crime, revealed numerous mitigating circumstances, and led the jury to impose a lesser sentence of life without possibility of parole"; a review of the records and interviews with "potential witnesses who were willing to testify . . . could have established numerous mitigating factors that could have swayed the jury to a finding of life in prison rather than death"; and, with regard to the specific allegation that counsel should have called Borden's treating physicians at the penalty phase, "[m]ental health testimony would have played an important part in Mr. Borden's mitigation case, given the reduced level of mental health deficiency necessary to create a mitigating condition."

> . . . Nowhere in his Amended Petition does Borden plead facts that would tend to show that he was prejudiced by his counsel's allegedly deficient performance. Indeed, we have no substantive factual allegations that we may properly assess.

Borden, 646 F.3d at 821-22 (emphases added; footnote omitted).

23

Just as in Borden, Powell, and Price, Boyd asserts at the highest order of abstraction that further penalty phase preparation would have resulted in additional mitigating testimony, but fails to detail what this testimony was or explain how it would have affected the outcome. The most specific claim he makes is the suggestion that some of these new witnesses could have testified about Boyd's widespread positive impact in his community. But the allegations do not explain how this evidence would have changed the sentencing outcome; how this evidence would have led to statutory mitigators; how it would have undermined the aggravating circumstances; or how it would have changed the portrait of Boyd that was painted at trial.

In short, because Boyd's petition completely failed to detail what mitigating evidence should have been developed, and, failed to provide the kind of evidence that may warrant relief under Strickland, we cannot say that the Alabama appellate court's rejection of this claim was contrary to or an unreasonable application of Strickland.

---

Similarly, in Powell, the Alabama state courts also applied Rule 32.6(b) to deny the petitioner's ineffective-assistance-of-counsel claims. Powell, 602 F.3d at 1275. Again we rejected the claim, observing that the petitioner failed to allege in any way what mitigating circumstances trial counsel had failed to uncover. Id. See also Price v. Allen, 679 F.3d 1315, 1325-26 (11th Cir. 2012) (rejecting a Strickland claim where "the allegations regarding the evidence that his friends, family members and school records would have revealed . . . [were] too general and conclusory to be able say that there is a reasonable probability that this evidence would have changed the outcome of Price's sentencing.").

24

## 2. Ineffectiveness at Guilt Phase

Boyd also argues that his trial counsel were ineffective during the guilt phase by failing to adequately investigate the capital murder charge. Once again, we conclude that the Alabama Court of Criminal Appeals's dismissal of this claim because it was facially insufficient under <u>Strickland</u> -- and in particular, under the <u>Strickland</u> prejudice prong -- was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

Boyd alleged, again at the highest level of abstraction, that trial counsel failed to investigate every avenue of defense, performed no independent investigation, failed to uncover exculpatory evidence, failed to challenge the constitutionality of Boyd's detention, failed to cross-examine eyewitness and expert testimony, and failed to object to prejudicial evidence. That is all he says. As the state courts found, Boyd's petition did not disclose the "critical exculpatory evidence" that should have been uncovered by his counsel; did not disclose "one specific piece of evidence that went undiscovered"; did not disclose any reason why Boyd's arrest and pretrial detention were unlawful; did not offer how counsel failed to adequately cross-examine witnesses or the information that was omitted as a result of the inadequate cross-examination; and did not suggest any other kind of defense that trial counsel should have investigated or presented. <u>Boyd</u>, 913 So.

2d at 1131-32.  Boyd failed to say what a better investigation or trial performance by counsel might have revealed or how it might have made the outcome different. The Alabama Court of Criminal Appeals's conclusion was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

### 3.    Brady

Finally, Boyd claims that the prosecution failed to turn over exculpatory evidence, in the form of statements of co-defendants and agreements with defense witnesses, which would have cast doubt on the prosecution's case while bolstering Boyd's defense, all in violation of Brady v. Maryland.  In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment."  373 U.S. at 87.  A Brady violation has three components: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  Evidence is not considered to have been suppressed if "the evidence itself . . . proves that [the petitioner] was aware of the existence of that evidence before trial."  Felker v. Thomas, 52 F.3d 907, 910 (11th Cir. 1995).  The prejudice or materiality

requirement is satisfied if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985); see also Kyles v. Whitley, 514 U.S. 419, 433 (1995). Materiality is determined by asking whether the government's evidentiary suppression undermines confidence in the guilty verdict. See Kyles, 514 U.S. at 434, 436-37 & n.10.

For starters, while Boyd argues that the district court erroneously found the claims to be procedurally barred because of the state court's dismissal under Rules 32.3 and 32.6, he never mentions that they were also found to be procedurally barred because he never raised the claim at trial or on direct appeal, as required by Alabama Rule of Criminal Procedure 32.2(a)(3) and (a)(5) ("Rule 32.2(a)(3) and (a)(5)"). We have squarely held that claims barred under Rule 32.2(a)(3) and (a)(5) are procedurally defaulted from federal habeas review. See Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) ("The district court correctly determined that the claims . . . are procedurally defaulted under Rules 32.2(a)(3) and (5) because they were not raised either at trial or on appeal."); see also Holladay v. Haley, 209 F.3d 1243, 1254 & n.9 (11th Cir. 2000) (finding claims

27

dismissed under Rule 32.2(a)(5) to be procedurally defaulted in federal court).

Boyd's <u>Brady</u> claims are procedurally barred.[5]

But even if the <u>Brady</u> claims, somehow, were not procedurally barred, the state court did not act contrary to or unreasonably apply clearly established Supreme Court law in rejecting them. As for the first one -- that Boyd's own statement to police was suppressed -- this is not <u>Brady</u> material. Boyd was obviously present during this questioning and thus aware of anything he may have said. Evidence is not suppressed if "the evidence itself . . . proves that [the petitioner] was aware of the existence of that evidence before trial." <u>Felker</u>, 52 F.3d at 910.

As for the remaining claims, Boyd fails to show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Bagley</u>, 473 U.S. at 682. Again he has failed to say what exculpatory and impeachment evidence taken from his co-defendants the State had developed, what conflicting statements by the defense's witnesses the State possessed, or what defense agreements the State had made with some of its witnesses. He does not even name any of the alleged witnesses or co-defendants.

---

[5] We add that Boyd has raised no argument that these rules are not "independent and adequate" state grounds for a procedural-bar determination.

His allegations do not begin to explain how he was prejudiced, and we cannot say that the state court's dismissal of them was contrary to or an unreasonable application of federal law.

In the face of Boyd's complete failure to demonstrate prejudice, the state court's rejection of Boyd's <u>Brady</u> claims was not contrary to or an unreasonable application of clearly established Supreme Court law.

## IV.

### A.    The Effect of the State Court's Procedural Bar of the Amended Petition

Boyd also argues the district court wrongly concluded that the claims he raised in his <u>amended</u> Rule 32 petition were procedurally barred from federal habeas review. As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are "independent and adequate" to support the judgment. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991).  In <u>Card v. Dugger</u>, 911 F.2d 1494 (11th Cir. 1990), we established a three-part test to help us determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim.  <u>Id.</u> at 1516.  Second,

29

the state court decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law." Id. Finally, the state procedural rule must be adequate; i.e., it may not be applied in an arbitrary or unprecedented fashion. Id. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine. Id. at 1517. In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)); Cochran v. Herring, 43 F.3d 1404, 1408 (11th Cir. 1995). Boyd takes issue with the first and third prongs of the test, so we only address them, and conclude that the procedural bar test has been met.

### 1. State Court's Express Statement

To begin with, the Alabama Court of Criminal Appeals expressly said that it was refusing to consider the claims in Boyd's amended petition because "Boyd has failed to preserve this issue for review," 913 So. 2d at 1123, further explaining that "Boyd never moved for leave to file the amended petition, and the circuit court never entered an order granting Boyd leave to do so," id. at 1124. It then said: "[T]o the extent that Boyd, in his brief on appeal, cites to and relies on

30

allegations he raised only in his amended petition and not in his original petition --

the dismissal of which is before us for review -- we note that those allegations are

not properly before us, and we will not consider those allegations in our resolution

of this appeal."  Id.; see also id. at 1126 n.7 ("[W]e will consider only the factual

allegations contained in Boyd's original petition in our analysis of whether the

circuit court correctly dismissed Boyd's claims, because those allegations

contained only in Boyd's amended petition, and not in his original petition, are not

properly before us."); id. at 1140 n.10 (noting that Brady claims and factual

allegations therefor raised only in amended petition would not be reviewed).

The Alabama Court of Criminal Appeals could not have been any clearer in

explaining that the claims raised in Boyd's amended petition were not considered

precisely because they were procedurally barred.  "Failing to preserve" is

quintessential procedural bar language.  See, e.g., Ferguson v. Sec'y for Dep't of

Corr., 580 F.3d 1183, 1212 (11th Cir. 2009) (describing a claim as procedurally

barred when a petitioner failed to "preserve[] the issue for appellate review"); Judd

v. Haley, 250 F.3d 1308, 1312 (11th Cir. 2001) (describing a claim as procedurally

barred when the petitioner had "failed to preserve [an issue] for the record").[6]

Thus, the first prong of the procedural bar test has been met.

## 2. Firmly Established and Regularly Followed

The Alabama Court of Criminal Appeals hinged its procedural dismissal on, among other things, Boyd's failure to move the court for leave to file an amended petition, or to receive any indication from the circuit court that it had accepted his amended petition. The record clearly reflects that Boyd never sought <u>any</u> kind of leave to amend, and, never obtained any leave to amend.[7] On appeal, Boyd claims, without any support in Alabama law, that he was entitled to file his amended petition without leave of court and that the Alabama appellate court erred in relying on any such rule.

---

[6] As for Boyd's suggestion in his blue brief that the state appellate court resolved the claims in his amended petition on the <u>merits</u>, there is no support for this in the state court decision, and Boyd conceded as much at oral argument.

[7] In fact, even at the hearing on the State's original motion to dismiss, Boyd never asked the trial court for leave to file his amended petition, nor did he even so much as mention that he had filed one. This is particularly salient because (1) the trial judge explicitly asked which motions needed to be addressed -- to which the petitioner responded that there were four, consisting of "two motions for funds for experts" and "two other motions, discovery motions"; (2) the State argued that Boyd was "probably going to ask for permission to amend the petition at some point"; and, indeed, (3) the amended petition was filed some <u>thirty-one months</u> after the original one. The most that can be said is that Boyd's counsel may have referred in his argument to new facts only mentioned in the amended petition, but never, in words or substance, did he ask for leave to amend the petition.

32

However, it is plain that under Alabama law, amendments to Rule 32 petitions are not filed as a matter of right. Rule 32.7(b) says that "[a]mendments to pleadings <u>may</u> be permitted at any stage of the proceedings prior to the entry of judgment," and Rule 32.7(d) says that "[l]eave to amend shall be freely granted." (Emphases added). The Alabama courts have interpreted the rule in this way:

> [A]mendments should be freely allowed and . . . trial judges must be given discretion to allow or refuse amendments . . . . The trial judge should allow a proposed amendment if it is necessary for a full determination on the merits and if it does not unduly prejudice the opposing party or unduly delay the trial. <u>The grant or denial of leave to amend is a matter within the sound discretion of the trial judge</u> . . . .

<u>Talley v. State</u>, 802 So. 2d 1106, 1107-08 (Ala. Crim. App. 2001) (emphasis added) (quoting <u>Cochran v. State</u>, 548 So. 2d 1062, 1075 (Ala. Crim. App. 1989) (quotations omitted)).

In <u>Ex parte Rhone</u>, 900 So. 2d 455 (Ala. 2004), the Alabama Supreme Court approved the very language used by the Alabama Court of Criminal Appeals in <u>Talley</u> and said that this language -- dating back to 1989 -- is "consistent with this Court's prior decisions, as well as with Rule 32.7." <u>Id.</u> at 458.[8] In <u>Rhone</u>, the court expressly said that the right to amend a Rule 32 petition is not "unfettered,"

---

[8] Thus, for example, in <u>Ex parte Nesbitt</u>, 850 So. 2d 228 (Ala. 2002), the Alabama Supreme Court relied on Rule 32.7(b) and (d), as well as the language in <u>Talley</u>, to hold that the circuit court had properly granted leave for a petition to file an amended postconviction petition, that this petition related back to a timely original petition, and, thus, that the claims were not barred by a two-year limitations period.

33

since "[t]he right to amend is limited by the trial court's discretion to refuse an amendment based upon factors such as undue delay or undue prejudice to the opposing party." Id. at 459; see also Cochran, 548 So. 2d at 1075 ("The grant or denial of leave to amend is a matter within the sound discretion of the trial judge . . . ."). As the Alabama Court of Criminal Appeals explained in Cochran, "[t]he clear import of the language used in Rule [32.7](b) is that a petitioner does not have an absolute right to amend his petition prior to the entry of judgment." 548 So. 2d at 1075.

In short, under Alabama law, a trial court has the discretion to grant or deny leave to amend; these amendments should be freely granted, but only if the amendment is necessary and if it is not unduly prejudicial. Rule 32.7(b) -- as it exists now and when Boyd filed his amended petition -- plainly says that amendments "may" be permitted; it does not use the word "shall." This necessarily means, as the Alabama courts have repeatedly said, that a petitioner must seek permission from the court in order to file an amended petition. Similarly, Rule 32.7(d) says that "leave" to amend shall be freely granted; if, however, the right to amend were unfettered, no such leave would be needed.

Thus, while Boyd claims that there is no authority in Alabama law for a rule requiring leave to amend, and therefore that his amended petition was

34

automatically accepted by the trial court upon filing, his argument is refuted by the plain language of Rule 32.7 and by Alabama's controlling case law. Since Alabama's rules of procedure and its case law are clear that Boyd had no unfettered right to amend his petition, and because he failed to seek leave to do so, failing even to highlight the matter for the trial judge, we conclude that the "leave" requirement has been "'firmly established and regularly followed'" for purposes of our procedural default analysis. See Ford, 498 U.S. at 423-24. Thus, the third prong of the "independent and adequate state ground" test has been met. The Alabama Court of Criminal Appeals's procedural dismissal was based on independent and adequate state grounds.[9]

---

[9] Boyd's suggestion that the "leave" rule serves no legitimate state interest is unconvincing. In the first place, it is for Alabama to decide whether its leave rules serve a prudential purpose. And in the second, as the Alabama Supreme Court has explained, "[t]he rationale for requiring a party to raise an issue before the trial court in order to preserve the issue for appeal has a strong policy basis." Ex parte Elba Gen. Hosp. & Nursing Home, Inc., 828 So. 2d 308, 314 (Ala. 2001). That is:

> [F]airness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to . . . . The principal rationale, however, is judicial economy. There are two components to judicial economy: (1) if the losing side can obtain an appellate reversal because of error not objected to, the parties and public are put to the expense of retrial that could have been avoided had an objection been made; and (2) if an issue had been raised in the trial court, it could have been resolved there, and the parties and public would be spared the expense of an appeal.

State v. Beaird, 981 So. 2d 386, 392 (Ala. 2007) (quotations omitted).

In Coleman v. Thompson, the Supreme Court held that when a state prisoner has defaulted his federal claims in state court based on an independent and adequate state procedural ground, the federal court is barred from reviewing the claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." 501 U.S. 722, 750 (1991). Boyd has made no attempt to overcome the procedural default by showing either adequate cause for or actual prejudice arising from the default, or by claiming that a failure to consider the claim would result in a fundamental miscarriage of justice. Thus, we agree with the district court that we are precluded from considering the claims found in Boyd's amended petition. See Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999).

**B.    The Claims in the Amended Petition**

But even if we were to conclude that the claims raised in the amended petition were not procedurally barred on federal habeas review, he still would not be entitled to relief. As an initial matter, Boyd has not argued to us the merits of the claims found in his amended petition. Notably, in his application for a COA, he asserted that if his original Rule 32 claims were not specific, then his amended Rule 32 claims were. See Application for COA at 11 ("Even if Mr. Boyd's

36

original Rule 32 petition was insufficiently vague -- which it was not -- he cured

any such purported defects by filing his Amended Rule 32 Petition. The Amended

Rule 32 Petition sets forth in even greater detail the factual and legal bases for Mr.

Boyd's claims. (See Amended Rule 32 Petition, attached as Exhibit E).").

However, although we granted him a COA on the issue of specificity, he did not

argue in his blue brief the claims found in his amended petition. Nor, moreover,

did he argue all of the claims found in the original petition -- instead, he only

raised portions of his ineffectiveness and Brady claims, which we've already

examined. See Isaacs v. Head, 300 F.3d 1232, 1238 (11th Cir. 2002) (observing

that a habeas petitioner had abandoned on appeal all but eight of the issues for

which he had received a COA); Atkins v. Singletary, 965 F.2d 952, 955 n.1 (11th

Cir. 1992) (noting that a habeas petitioner abandons claims not raised on appeal).

Nonetheless, out of an abundance of caution, we have reviewed all of the

claims found in Boyd's amended petition, and have determined that none has any

merit. To illustrate, we examine a few of those claims here.

### 1.    Guilt-Phase Ineffectiveness

Among other things, Boyd argues in his amended petition that trial counsel

were ineffective because they failed to investigate Boyd's alibi defense. The

petitioner cites five witnesses who allegedly would have provided him with an

alibi for the time of the murder. However, this proffered testimony is slender, and at times, wholly inconsistent. Thus, for example, Willie Maud Watson says that, between 4:00 and 5:00 p.m., Boyd, Ackles and Cox came to her house and she asked them to go to Catherine Jones's house to put up balloons for a party. Somewhat supportive of this statement, Felecia Parker says that Boyd and others came over to Catherine Jones's house at some unstated time and put up balloons for the party. She adds they finished and went out on the porch just as the sun was going down (at about 7:45 p.m.).

Yet contrary to Watson's statement, Sylvester McGrew claims that sometime after 5:00 p.m., he saw Officer Raines chase Boyd, and after the chase, McGrew walked with Boyd to Catherine Jones's house. And contrary to all of these claims, Felicia Jones says that after 5:00 p.m., she met Boyd, alone, at Watson's house. She adds that they stayed at the house until "after dark" -- so, from sometime before to sometime after 7:45 p.m. Obviously, Boyd could not have been at Catherine Jones's house at dusk and at Watson's house from late afternoon until after dark. In addition, it seems remote indeed that during exactly the same time period, Boyd got into a foot chase with a police officer in the Glen Addie housing project.

Petitioner also offers a statement by Sylvester Boyd, but it is of little value as well. He says that he and Boyd went to the Glen Addie Community Center sometime in the "early afternoon" on July 31, 1993. They stayed an hour-and-a-half and returned home after getting a drink at a nearby convenience store. Based on this statement, Boyd and Sylvester could have left the Community Center shortly after 1:30 p.m., gotten their drinks and gone home well before the offense occurred. Or it could have been later. But Sylvester makes no mention of Anthony Boyd being chased out of the project by Officer Raines. Thus, if the chase did, in fact, occur on July 31, Sylvester was with his brother earlier in the afternoon, rather than later.

In short, none of these witnesses can account for Boyd's whereabouts at the time of the murder, except for Parker and Jones, and their statements directly collide. And while the petitions proffered that Raymond Lee Edwards would testify to seeing Ingram in the Glen Addie project at about 7:30 p.m. on July 31, 1993, this assertion is nothing more than a bare allegation without evidentiary support. No statement by Edwards has been located anywhere in the record.

In the face of the conflicts within the statements, no reasonable possibility appears that the outcome of this case would have been any different had this information been presented at trial. This is particularly true since the evidence of

39

guilt at trial was relatively strong. In addition to the testimony of co-defendant Quintay Cox, the State called another witness who testified that Boyd had admitted that he and some others had killed the victim at the ball park. Three other witnesses testified to seeing Boyd in a blue van into which they observed the victim being forced. Still others testified to hearing Boyd say that the victim owed money for drugs and that they had to get him.

Furthermore, as the state court observed, trial counsel mounted a vigorous defense, including alibi testimony, and the testimony proffered by the petitioner in the amended petition would be merely cumulative. In short, the "new" alibi evidence is contradictory, cumulative, and weak when compared to the evidence adduced at trial. So, even if we were to consider this later proffer and assume that trial counsel performed deficiently by failing to present it (and there is no indication of that), there is no reasonable probability of a different outcome.

### 2. Penalty-Phase Ineffectiveness

Boyd also says that defense counsel's representation during the penalty phase of the trial was deficient because counsel failed to investigate or present readily available mitigation testimony. Boyd claims that trial counsel was ineffective because the mitigation expert hired by defense counsel said she was unable to do all the work she needed to do without being given more time.

However, Boyd does not say what else the mitigation expert could have done with additional time, nor does he explain how he was prejudiced by this failure to have more time to prepare. Thus, the petitioner has failed to establish the prejudice required to make out a claim of ineffective assistance under Strickland.

Boyd additionally claims that trial counsel should have investigated whether chemical pollution (the presence of polychlorinated biphenyls or "PCBs") in the Anniston, Alabama area might have caused a drop in his IQ and thereby increased his tendency toward criminality. The petitioner makes only the barest assertion that pollution could have caused some sort of damage to him. Other than citing to an article discussing findings that "may support" a link between PCB exposure and criminality through lower IQ, Boyd provides no evidence about the existence of an actual link between those factors, about the concentration of PCBs in Anniston, about Boyd's exposure to PCBs, about the detection of PCBs in his blood, or about his IQ. Most notably, he also fails to explain how an investigation of PCBs would have satisfied the Strickland prejudice prong. Plainly this claim fails too.

What's more, in Boyd's case, the Alabama Court of Criminal Appeals held that the manner of investigation and presentation of evidence concerning mitigating circumstances was designed to present a reasonable case in favor of

mitigation and that counsel was not ineffective. 913 So. 2d at 1138-39. Boyd has

given us no reason to doubt this conclusion. As the state courts observed, during

the penalty phase, the mitigation expert provided the petitioner with valuable

assistance in locating and preparing witnesses for the penalty phase of the trial.

Id. at 1139. In addition, the trial court cited the number of witnesses called by the

petitioner's trial counsel that revealed a substantial investigation by counsel. Id. at

1136-38. The trial court noted that the defense theme was that Boyd's youth, lack

of significant criminal history, his involvement in his community sports programs

and with his children, and his friendliness to co-workers, family members and

friends warranted life in prison without parole. Id. at 1137. They found this

approach to be reasonable. As the record further shows, several defense witnesses

at the penalty phase, including Teresa Gilbert, Velma Northard, Roderick

Henderson, James Brown, Durane Allen, Barbara Franklin, William Butler, and

Walter Garrett testified about Boyd's positive influence on them and on children

in the community. Id. at 1136-38. Moreover, the trial court found two statutory

aggravating circumstances: that the crime was committed while the petitioner was

engaged in the commission of a kidnaping and that the crime was especially

heinous, atrocious and cruel compared to other capital offenses. Boyd has not

alleged how the outcome of the penalty phase would have been different had his trial counsel performed differently.

We previously have affirmed findings of no prejudice where, as here, (1) the new mitigation evidence did not establish any statutory mitigating factors, (2) the new mitigation evidence did not reduce the weight of the statutory aggravating factors, and (3) the jury had heard some non-statutory mitigation of the same character the new mitigation presented, just in less detailed form. Boyd, 592 F.3d at 1298, 1300-01; Robinson v. Moore, 300 F.3d 1320, 1346-48 (11th Cir. 2002); see also Rutherford v. Crosby, 385 F.3d 1300, 1315-16 (11th Cir. 2004). Just as in those cases, Boyd has failed to satisfy Strickland.

### 3. Brady Claims

It is also abundantly clear that Boyd's additional Brady claims, new to his amended petition, lack merit. His main Brady claim seems to be based on Anniston Police Department logs from a police visit to a hotel in Oxford, Alabama, during the "night of July 31, 1993 and in the early morning of August 1, 1993," where and when Boyd was supposedly present during an altercation between Stalitha Garrett and Angie Page. Boyd has not shown how his presence in Oxford late during "the night of July 31, 1993 and in the early morning of

43

August 1, 1993" -- well after the crime was committed around dusk -- would "undermine[] confidence in the outcome of the trial." Kyles, 514 U.S. at 434.

As for his claim that he did not receive "any of the investigating officers' field notes," this claim is too vague to warrant relief. Boyd has offered no information about what was contained in the notes, and thus it is impossible to tell what may or may not have been suppressed. This claim therefore fails. See Strickler, 527 U.S. at 281-82 (requiring valid Brady claims to be based upon evidence favorable to the accused and to have resulted in prejudice).

Finally, Boyd argued that the prosecution "informed the Court at trial that it had a 'Nagra tape' of Mr. Boyd threatening Roderick Dye if he testified," in addition to the State having "indicated [that] it had evidence of other threats made to various witnesses in this case" that it failed to produced. Boyd has not shown how information suggesting that he threatened others if they testified against him could possibly be "favorable to the accused, either because it is exculpatory, or because it is impeaching"; nor is it at all apparent how Boyd was prejudiced because he lacked tapes in which he purportedly threatened other people. See id.

The remainder of Boyd's claims, also stated at the highest order of abstraction -- and ranging from additional ineffectiveness claims to due process claims to Enmund, Apprendi and Ring claims -- similarly have no merit. Because

44

these claims are not properly before us, and because we can mine no merit from them in any event, we conclude that Boyd is not entitled to habeas relief.

We, therefore, affirm the district court's judgment denying the petitioner habeas relief.

**AFFIRMED.**